UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN RICHARDS,

        Plaintiff,                      Case Number 19-13224

v.                                              Honorable David M. Lawson

WARREN POLICE DEPARTMENT,
JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,
JOHN DOE #4, and JOHN DOE #5,

        Defendants.
_____/

## **OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

Plaintiff Kevin Richards filed a *pro se* complaint against the Warren Police Department and five unnamed police officers in which he alleged that he was assaulted and mistreated when they entered his home without a warrant and arrested him for domestic violence and resisting arrest. As the case progressed, *pro bono* counsel appeared for Richards. However, he never identified the John Doe defendants or joined them as parties. The Warren Police Department has filed a motion for summary judgment, arguing that the case cannot proceed properly against pseudonymously named individuals and it is too late to add the actual police officers now. It also argues that the Warren Police Department is merely an agency of the unnamed City of Warren and the police department is not a juridical entity that can be sued. In addition to these procedural defenses, the defendant contends that the plaintiff's claims are precluded by the substantive rulings of the state court in the underlying criminal prosecution. The motion is fully briefed, and oral argument will not aid in the disposition. The Court will decide the motion on the papers. *See* E.D. Mich. LR 7.1(f)(2). Because the plaintiff cannot overcome his procedural missteps and the proper

party defendants are not before the Court, the motion will be granted, and the case will be dismissed without prejudice.

I.

The plaintiff's claims are based on an incident that occurred on November 2, 2017, when he was at home with his wife in Warren, Michigan. He alleges in his complaint that Warren city police officers entered his home, used excessive force to subdue him, and confined him in jail where he was denied medical attention. The parties have not developed the facts of the case in their motion briefs, but the plaintiff's story has been told in his complaint.

According to that paper, on the night in question, five officers of the Warren city police department came to the plaintiff's home and "began knocking on the doors and windows." The plaintiff was on a video phone call with his brother, and he began to record the ensuing incidents.

The plaintiff alleges that the officers entered the home by force, and he asked them to leave. They did not. Instead, two of the officers grabbed the plaintiff by his wrists, with one holding each arm; a third officer snatched the phone from his left hand and threw it to the ground, smashing it; the fourth then tackled the plaintiff onto his living room couch, while the fifth officer pepper sprayed him. The first two officers proceeded to punch the plaintiff in his sides, while the third kicked the back of his legs, and the fourth grabbed him by the hair and began to punch him in the head. The officers then handcuffed the plaintiff and conveyed him to the back seat of a police car. After he was in the police cruiser, one of the officers punched him several more times in the face, while he was seated and cuffed. When one of the officers got into the front seat of the car, the plaintiff asked for medical attention, but his request was denied.

The plaintiff was taken to the Warren City Jail, where he began to dry heave and almost passed out due to the earlier blows to his head. He again asked for medical attention, and the

request again was refused. The plaintiff says that he then was held in solitary confinement for some time, until he was transferred to the Macomb County Jail to await trial.

The defendants present a somewhat more expansive narrative, which was supported by specimens of the police reports and transcripts from the state court criminal prosecution that followed the plaintiff's arrest. According to them, the officers responded to a 911 call that stated a white female was observed "screaming 9-1-1" as she was "dragged across the front yard" of the Warren residence by a white male. The woman was dragged into the house by the unidentified male, and no one was seen leaving the residence before the 911 call was placed. When officers arrived, the house was dark. Two officers began to make their way around the residence calling out to any occupants and knocking on windows. One officer saw a white female in the bathroom applying makeup in an apparent attempt "to cover something up." Finally, a male voice responded to another officer's continued knocking at the door, but the door was not opened.

When the plaintiff eventually opened the door, he had a cell phone in his hand and appeared to be recording with it. Officers saw past him and spotted a white female who was crying, had a bruise under one eye, and appeared "fearful" and "in distress." When officers then entered the home, the plaintiff became "irate," and he began "screaming" and demanding to know why the officers were in his house, threw his phone on the ground, and then "assumed a bladed stance," while "yelling that he had done nothing wrong." Officers attempted to "detain" the plaintiff by grabbing his wrists and then fell onto the couch with the plaintiff as they continued to restrain and attempted to handcuff him. When the plaintiff began "thrashing around" on the couch, one officer used pepper spray to subdue him. A brief tussle ensued while the plaintiff continued struggling and trying to break free.

The plaintiff was charged with domestic violence and resisting and obstructing a police officer. He was bound over for trial and eventually pleaded no contest. The plaintiff's trial counsel attempted unsuccessfully to challenge the legality of the charges at the preliminary examination and later via a motion to quash the information and a motion to suppress. The defense argued that the charges should be dismissed because (1) the entry into the home was without a warrant and there were no exigent circumstances to justify the warrantless intrusion, and any evidence derived subsequent to the unlawful entry therefore must be suppressed, and (2) the plaintiff had a legally recognized privilege to act in self-defense against an unlawful arrest, and he therefore could not be held liable on the count of resisting and obstructing. The trial court denied both motions, after concluding that there was ample probable cause to suspect that a domestic assault had occurred on the premises, and the entry into the home was justified by exigent circumstances. The plaintiff filed a motion to stay the case for an interlocutory appeal, which was denied. He then pleaded no contest to both charges. He later filed a motion to withdraw his plea, which was denied. He eventually filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied summarily "for lack of merit in the grounds presented." His application for leave to appeal to the Michigan Supreme Court also was denied in a one-sentence order because the court was not persuaded "that the question presented should be reviewed."

The plaintiff filed his *pro se* civil rights complaint in this case on November 1, 2019. The case initially was referred to the assigned magistrate judge for management of all pretrial proceedings. However, the magistrate judge granted a request to refer the case for appointment of *pro bono* counsel, and plaintiff's counsel appeared on March 10, 2020. After discovery closed and the defendants filed their motion for summary judgment, the Court took note that counsel had appeared to represent the plaintiff, and the referral to the magistrate judge was withdrawn.

The sparse *pro se* pleadings are vague on the precise nature of the claims. The complaint never was amended, even after counsel was appointed for the plaintiff. However, the opposition to the defendants' motion, which was filed by the plaintiff's *pro bono* counsel, frames the causes of action as follows: (1) warrantless search of the plaintiff's residence, contrary to the Fourth Amendment, (2) excessive force during the arrest consisting of beating, tackling, and pepper spraying the plaintiff without justification, and (3) denying needed medical attention (presumably a Fourteenth Amendment claim). The defendants, for their part, read the complaint as asserting claims of false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment, and a "Fifth Amendment" claim, the premise of which is somewhat unclear, since no further specification of that cause was stated in the pleadings.

Noteworthy in the context of the pending motion, the individual officers against whom the complaint was directed were named in the pleadings only as "John Does 1-5." The defendants assert that the officers' names were known to the plaintiff at least since the criminal trial proceedings, and, further, their identities were disclosed by the defense in this case well within the discovery period. Nevertheless, the plaintiff never has filed any amended pleading or motion to amend the complaint to add the individual defendants by name.

II.

Defendant Warren Police Department has moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Id.* at 558. (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Instead, that party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The party who bears the burden of proof must present a jury question as to each element of its claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). It must be

emphasized, however, that "[i]n evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *PDV Midwest Ref., LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

A.

The defendants argue that Michigan law does not recognize a municipal agency such as the police department as a juridical entity distinct from the City of which it is a part, and it therefore cannot properly be a party to this suit. They are correct. The Sixth Circuit and district courts in this circuit have held in numerous instances, applying the law of Michigan and similar law in other states, that a municipal agency such as a police department is not a juridical entity amenable to civil suit under 42 U.S.C. § 1983. *McGrew v. Duncan*, 333 F. Supp. 3d 730, 744 (E.D. Mich. 2018), *aff'd in part, appeal dismissed in part and remanded*, 937 F.3d 664 (6th Cir. 2019) ("[C]ity departments are not separate legal entities against which a suit can be directed. McGrew's claims against the Detroit Police Department are therefore DISMISSED."); *Garland v. Smigielski*, No. 14-865, 2015 WL 5432770, at *4 (W.D. Mich. Sept. 15, 2015), *aff'd* (Sept. 7, 2016) ("The Benton Harbor Police Department is not a legal entity capable of being sued.") (citing *Howard v. Wayne County Sheriff's Office*, 417 F. App'x 465, 467-68 (6th Cir. 2011); *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007)); *McPhail v. County of Macomb*, No. 12-12134, 2014 WL 172275, at *3 (E.D. Mich. Jan. 15, 2014) ("Michigan courts have held that, because police departments and other municipal departments are 'unable to raise funds for payment,' they cannot be sued for torts.") (citing *Machonski v. City of Detroit*, 162 Mich. App. 485, 413 N.W.2d 438 (1987); *McPherson v. Fitzpatrick*, 63 Mich. App. 461, 234 N.W.2d 566 (1975)).

In some instances, courts have afforded a generous reading to a complaint and construed a claim directed at a municipal police department as a claim against the municipality itself. *See*, *e.g.*, *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) ("We note at the outset that the named defendant in this action, the Police Department of the City of Zanesville, is not a juridical entity subject to suit under Ohio law. The police department is a subdivision of a municipal corporation, the City of Zanesville, which is subject to suit. The City of Zanesville, Tysinger's actual employer, ought to have been the named defendant in this action. Yet, inasmuch as the issue has not been raised by either party or the lower court, and considering that adjudication by default is disfavored, we liberally construe the complaint as having been brought against the City of Zanesville and proceed to consider the merits of Tysinger's claims.")). That indulgence would not help the plaintiff here, however.

Local governmental entities, like the City of Warren, cannot be held liable under section 1983 solely for the acts of their agents; they are accountable under that statute only for their own conduct. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that "a municipality cannot be held liable [under section 1983] solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). The plaintiff, therefore, must point to an official policy, custom, or practice of that local government as the source of the constitutional violation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). And he must allege facts that show a causal connection between the policy and the injury. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).

The plaintiff has not alleged facts, either in the complaint or in his motion papers, that would be sufficient to hold the City of Warren liable, even if it were named as a defendant in this

case. In his response to the motions for summary judgment, the plaintiff offered a truncated argument asserting only that the police department has a policy that states that officers should "[n]ever, under any circumstance, subject a prisoner to any unnecessary or excessive application of force." He then asserts, without citing the record or any authority, that there is a "question of fact" about whether the individual officers violated that policy, or whether Warren police officers had a "regular practice" of ignoring the use of force policy.

A police officer that violates a municipal policy that *prohibits* the use of excessive force will not subject the municipality to liability under section 1983. Municipalities are only liable under section 1983 if it is the policy or custom that causes the alleged constitutional violation. *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). A violation of a benign policy by an individual rogue officer cannot sustain a constitutional claim against the city, because the section 1983 liability cannot be established under the doctrine of *respondeat superior*. *Monell*, 436 U.S. at 691. Instead, to establish a *Monell* claim, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

A "regular practice" of ignoring the city's use-of-force policy might establish an unconstitutional municipal custom or practice. But to succeed on that theory, the plaintiff must offer evidence "showing . . . a history of widespread abuse that has been ignored by the City." *Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir. 1994) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 397 (1989)). The plaintiff has not even attempted to meet that requirement.

Because the plaintiff has not sued a juridical entity capable of being sued, and because even a generous reading of the complaint will not remedy that defect, summary judgment will be granted to the Warren Police Department.

B.

The defendants also insist that the complaint against the John Doe defendants must be dismissed because the plaintiff, despite having ample opportunity to do so, has made no attempt to amend his pleadings to name the individual officers as defendants, and the case cannot proceed against pseudonymously named individuals. There cannot be much dispute with that basic argument. A plaintiff "bringing a civil rights complaint must specifically identify each defendant against whom relief is sought, and must give each defendant notice of the action by serving upon him or her a summons and copy of the complaint." *Wendt v. Hutchinson*, No. 08-12485, 2008 WL 4280117, at *3 (E.D. Mich. Sept. 11, 2008) (citing *Feliciano v. DuBois*, 846 F. Supp. 1033, 1048 (D. Mass. 1994)).

The plaintiff offers little resistance to that argument, explaining obliquely that due to unspecified "difficulties" arising from the pandemic situation, he was "unable" to accomplish any timely amendment of the pleadings. He does, however, ask for permission in his response brief to amend his complaint to add the individual officers by name.

That option is not available to him, however, because the addition of the actual police officers as defendants would be time-barred. The civil rights violations described in the complaint allegedly occurred on November 2, 2017. The statute of limitations for section 1983 claims brought by Michigan plaintiffs is three years. *Forrester v. Clarenceville School District*, No. 20-12727, 2021 WL 1812700, at *3 (E.D. Mich. May 6, 2021) ("When § 1983 claims arise in Michigan, as Plaintiffs' claims do in this instance, 'the appropriate statute of limitations . . . is

[Michigan's] three-year limitations period for personal injury claims.'" (quoting *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); citing Mich. Comp. Laws § 600.5805)). Thus, the limitations period expired on November 2, 2020. No attempt was made within that time to amend the pleadings, and there is no evidence that timely service on the individual officers was accomplished or even attempted.

Federal Rule of Civil Procedure 15 states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). However, the Sixth Circuit has determined that the rule "does not authorize the relation back of an amendment adding a new party." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010). Amendments that merely precipitate a "substitution" of parties may in some circumstances be permitted by Rule 15(c), but "[u]nder that rule, 'new parties may not be added after the statute of limitations has run,'" and attempted amendments to bring in a properly named defendant in place of a John Doe pseudonym "'do not satisfy the "mistaken identity" requirement of [Rule 15(c)(1)(C)(ii), formerly] Rule 15(c)(3)(B).'" *Bonds v. Daley*, No. 18-5666, 2019 WL 2647494, at *2 (6th Cir. May 17, 2019) (quoting *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)).

The plaintiff argues that his failure to add the defendants sooner was caused by his lack of knowledge of the five police officers' identities. The courts in this circuit have not found that to be a good excuse. *See Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 919 (E.D. Tenn. 2020) ("Amending a complaint to add or substitute a named defendant for an unknown John Doe defendant is considered a change in parties, not a mere substitution of parties. The Sixth Circuit has held that Rule 15(c) was not intended to protect a plaintiff who does not know the identity of

defendants and does not bother to ascertain the defendants' identities within the limitations period.") (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)); *see also Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012); *Bonds v. Daley*, No. 18-5666, 2019 WL 2647494, at *2 (6th Cir. May 17, 2019).

As those decisions have recognized, it is not possible for such an amendment to salvage time-barred claims. Here, it is undisputed that the plaintiff made no attempt to amend his pleadings to name the individual defendants, despite the fact that he has been represented by counsel since March 10, 2020. Moreover, the plaintiff was warned of the problematic misnomer when, soon after the suit was commenced, the Court issued an order denying his "motion to add names of officers to service documents," explicitly calling out the problem that service could not be completed on persons who were not properly named as parties to the case. Order Denying Request to Add Names to Service Documents, ECF No. 12, PageID.45 ("This matter is before the Court on a request by the plaintiff for an order directing 'that the defendants named [as] John Does #1, #2, #3, #4, and #5 be affixed to documents supplied for service.' The Court will deny the request because service cannot be completed, and no suit can be maintained against such pseudonymously named parties until their identities have been discovered and amended pleadings have been filed properly identifying them."). That order cited decisions holding to the same principle recognized by the above-cited authorities. Despite that early warning, the plaintiff never made any effort within the limitations period to amend his pleadings and properly name the defendant officers. There is no indication that service of process ever properly was completed, or even attempted, within the limitations period.

On identical facts, the Sixth Circuit has affirmed the dismissal of claims against John Doe defendants. *Bradfield v. City of Memphis*, 24 F. App'x 307, 308 (6th Cir. 2001). The same result is compelled here.

C.

The defendants also pose a substantive argument that the plaintiff's claims must be denied on the merits under the rule of claim preclusion, also known as *res judicata*, based on the state court's rulings rejecting the plaintiff's constitutional arguments in the related criminal case. However, the Court need not — and ought not — address that issue when there is no proper party who has been brought before the Court over whom the Court has personal jurisdiction.

III.

The Court must dismiss the claims against one defendant because it is not a legal entity amenable to suit, and against the others because personal jurisdiction was not obtained within the applicable limitations period. Because there are no other defendants properly named in the suit, the case in its entirety will be dismissed without prejudice.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 32) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

            s/David M. Lawson
            DAVID M. LAWSON
            United States District Judge

Date: May 28, 2021